MORTON FURNITURE CO. *vs.* DUBUQUE FIRE AND MARINE INSURANCE COMPANY.

Suffolk.   February 6, 1934. — June 26, 1934.

Present: CROSBY, PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Insurance*, Fire: cancellation; Broker. *Words*, "Broker who negotiated."

Where a duly licensed insurance broker, with whom an owner of property dealt with respect to obtaining a policy of fire insurance upon the property, directly or indirectly requested another duly licensed broker to obtain such a policy; the second broker procured the issuance of such a policy by a general agent of the insurance company; and the first broker was not known to the company or to its general agent, the first broker was not the "broker who negotiated" the issuance of the policy within the meaning of G. L. (Ter. Ed.) c. 175, § 187D, and of a provision inserted in the policy in accordance therewith.

Where, after the issuance of the insurance policy above described, the insured paid to the first broker a sum on account of the premium, but no part of the sum so paid was paid over to the company, the general agent or the second broker, the company, under said § 187D and such

provision of the policy, was entitled thereafter to cancel the policy by giving the insured the required notice but without tender to him of any portion of the premium.

CONTRACT on a policy of fire insurance. Writ in the Municipal Court of the City of Boston dated March 28, 1933.

The action was heard in the Municipal Court by *Carr*, J. Material evidence and findings by the judge are stated in the opinion. Certain rulings requested by the plaintiff were in substance to the effect that the defendant had not effectively cancelled the insurance policy because of the defendant's failure to tender to the plaintiff a ratable proportion of the premium, and that the plaintiff was entitled to recover. These requests were refused. The judge found for the defendant. A report to the Appellate Division was dismissed. The plaintiff appealed.

The case was submitted on briefs.

*H. Halperin*, for the plaintiff.

*R. T. Cox*, for the defendant.

CROSBY, J. This is an action of contract for alleged breach of an insurance policy. The plaintiff seeks to recover for a loss sustained by fire to furniture stock. The plaintiff claiming to be aggrieved by the trial judge's rulings and refusals to rule as requested, the case was reported to the Appellate Division for determination.

There was evidence that the defendant entered into a contract of fire insurance with the plaintiff under the Massachusetts standard policy on October 20, 1932, said policy to expire in one year. It covered the plaintiff's stock and merchandise to the amount of $2,000. The policy was delivered to the plaintiff by one Hyman Levenbaum, a duly licensed broker, through whom the plaintiff effected the policy to which the broker's name plate sticker was attached. There was a fire on January 6, 1933, damaging the stock and merchandise covered by the policy. Due notice of the fire loss was given by the plaintiff as required by the policy. Levenbaum employed one Kohl, who was also a licensed broker, who employed one Lane, another

licensed broker, to place this policy with the defendant through R. S. Hoffman & Co., general agents of the defendant. A second policy with the same terms, conditions, specifications and premium as the policy in question was placed in the same way and manner for the plaintiff by Levenbaum "with another insurance company, through R. S. Hoffman, general agents." It does not appear that Levenbaum was "known to the defendant or R. S. Hoffman & Co." On November 14, 1932, the plaintiff paid Levenbaum $50 on account of the premiums of the two policies, the premium on each being $35.40. No part of the amount so paid was actually paid over to the defendant, or to the intervening broker or agent.

A notice of the cancellation of the policy sued upon was delivered to the plaintiff on December 9, 1932, more than ten days before the loss occurred, and no tender or payment of unearned premium was made by the defendant or its agents at the time of the delivery of the notice of cancellation. A subsequent notice of cancellation signed by W. C. Ryan, treasurer of R. S. Hoffman & Co., was mailed to the plaintiff on January 11, 1933, and no tender or payment of unearned premium was made. The plaintiff suffered a loss because of the fire of $541.40, less five per cent of that amount being the value after the fire of the merchandise damaged.

The trial judge found that "the policy was issued by Hoffman & Co. at the instance of one Lane, a broker, who in turn was asked, directly or indirectly, to obtain the policy by one Levenbaum, a broker who directly represented the plaintiff but does not appear to have been known to the defendant or Hoffman & Co."; that when "the $50 was paid by the plaintiff to Levenbaum the plaintiff owed $70 for this and one other policy, issued by the same agent in different companies and charged to the plaintiff on the books of Levenbaum," and that "No application or apportionment of the $50 was made by the plaintiff or Levenbaum between the policies."

The policy upon which this action was brought provided that "The Company reserves the right after giving written

notice to the insured . . . and tendering to the insured a ratable proportion of the premium, to cancel this policy as to all risks subsequent to the expiration of ten days from such notice," and that "If the premium on this policy has not been paid to the company or its agent or to the duly licensed insurance broker through whom the contract of insurance was negotiated, this policy may be cancelled by the company in the manner herein provided without tendering to the assured any part of the premium."

G. L. (Ter. Ed.) c. 175, § 187D, provides: "A company issuing any policy of insurance which provides for cancellation by the company upon giving written notice to the insured and for the payment or tender to the insured of a return premium at any time either before, at or after cancellation, may cancel such policy by giving the notice provided therein in the manner prescribed by section one hundred and eighty-seven C without tendering or paying at any time or in any case any return premium thereon, if the insured has not prior to the date of such notice, actually paid the premium thereon either to the company, or to its agent who issued the policy, or to the duly licensed insurance broker who negotiated it or its continuance or renewal." The provisions of the statute are applicable to the case at bar.

It is the contention of the plaintiff that the notice of cancellation was not effective because no part of the premium paid by him was tendered with the notice of cancellation. G. L. (Ter. Ed.) c. 175, § 187D, above quoted, does not require the tender of a return premium "if the insured has not prior to the date of such notice, actually paid the premium thereon either to the company, or to its agent who issued the policy, or to the duly licensed insurance broker who negotiated it." The record shows that the plaintiff had not "prior to the date of such notice, actually paid the premium thereon either to the company, or to its agent who issued the policy." The question remains, was the premium paid "to the duly licensed insurance broker who negotiated it?" The interpretation of this provision of the statute does not appear to have been heretofore expressly passed on by this court with reference to the question here presented. St. 1878,

c. 166, § 1, provided that "Any insurance agent or broker who acts in negotiating a contract of insurance by any insurance company doing business within the Commonwealth, for any person other than himself, shall for the purpose of receiving the premium therefor, be held to be the agent of such company, any thing in the policy or contract of insurance to the contrary notwithstanding." This statute in substantially the same form has since been embodied in our law. G. L. (Ter. Ed.) c. 175, § 169. *Ritson* v. *Atlas Assurance Co. Ltd.* 279 Mass. 385, 391.

The first statute enacted in this Commonwealth giving an insurer the right to cancel policies without returning premiums was St. 1913, c. 625, § 1, which provided that "An insurance company issuing fire insurance policies on property in this commonwealth under the standard form required by law may cancel any such policy in the manner provided by law without tendering to the assured a ratable proportion of the premium, if the premium has not been paid to the company or its agent or to a duly licensed insurance broker through whom the contract of insurance was negotiated." This statute was repealed by St. 1923, c. 336, § 2, and another statute was enacted which is now G. L. (Ter. Ed.) c. 175, § 187D.

The precise question to be decided is whether the payment to Levenbaum was payment of the premium on the policy "to the duly licensed insurance broker who negotiated it." The finding of the judge "that the policy was issued by Hoffman & Co. at the instance of one Lane, a broker, who in turn was asked, directly or indirectly, to obtain the policy by one Levenbaum, a broker who directly represented the plaintiff but does not appear to have been known to the defendant or Hoffman & Co." fails to show that Levenbaum "negotiated" the policy with the defendant. The word "negotiate" has frequently been interpreted by courts and lexicographers and its use is generally applied in connection with the consummation of business transactions. In *Palmer* v. *Ferry*, 6 Gray, 420, at page 423, it was said that the word "negotiate" is to conclude by bargain, treaty or agreement. In *Everson* v. *General Accident, Fire & Life Assurance Corp.*

*Ltd.* 202 Mass. 169, it was said at page 172: "Negotiation means the entire transaction of applying for and finally issuing the completed contract of insurance. 'To negotiate' as given by lexicographers as well as by courts in substance is to traffic or conclude by bargain or agreement." See also *First National Bank of Greenville* v. *Sherburne,* 14 Ill. App. 566, 569; *People* v. *Augustine,* 232 Mich. 29. 3 Bouvier's Law Dictionary, 3d Revision, states at page 2331 that "negotiation" is "The deliberation which takes place between the parties touching a proposed agreement." We are of opinion that the words, "broker who negotiated," as used in the statute mean the broker who obtained and finally settled the terms and conditions of the policy with the insurer. The finding of the trial judge is conclusive. It appears that the plaintiff did not pay any premium to the broker who negotiated the policy with the defendant, and for that reason the defendant was not required to tender any part of the premium paid to Levenbaum by the plaintiff.

It follows that the action of the Appellate Division in dismissing the report was correct.

*Order dismissing report affirmed.*